# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Christopher Noel Ladd and<br>Donna Lynn Ladd,<br><br>　　　　　　　　　　　　Debtors. | C/A No. 10-05226-dd<br><br>Adv. Pro. No. 12-80238-dd<br><br>Chapter 7 |
| Michelle L. Vieira, as Chapter 7 Trustee<br>For Debtors Christopher Noel Ladd<br>and Donna Lynn Ladd,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CertusBank, N.A. and Price, Pyles,<br>Dangle, Parmer & Rooks, P.C.,<br><br>　　　　　　　　　　　　Defendants. | **ORDER** |

This matter is before the Court on a rule to show cause entered August 30, 2013; a motion to strike or dismiss second amended complaint entered by defendant Price, Pyles, Dangle, Parmer and Rooks, P.C. ("PPDPR") on September 4, 2013; and a motion to strike or dismiss second amended complaint filed by defendant CertusBank, N.A. on September 18, 2013. CertusBank also joined PPDPR's motion to strike or dismiss. Plaintiff responded to both motions to strike or dismiss and CertusBank and PPDPR replied. A hearing was held on October 8, 2013. After careful consideration of the applicable law and arguments of counsel, the rule to show cause is dissolved, and the motions are granted in part and denied in part.

1

## FACTS

According to Plaintiff's second amended complaint, the Ladds obtained a loan ("Loan 1") from CertusBank, as successor in interest to First Georgia Banking Company, on September 12, 2005, in the amount of $27,683. Loan 1 was secured by a Ford Explorer. On May 25, 2006, the Ladds obtained another loan ("Loan 2") from CertusBank in the amount of $77,408.35. Plaintiff alleges that CertusBank represented to the Ladds that Loan 2 would consolidate Loan 1 and that it would only be secured by a Chevrolet Tahoe. Eventually, CertusBank allegedly charged off Loan 1, repossessed the Ford Explorer, sold it for $3,708, and applied this amount to the balance of Loan 1. Plaintiff alleges that various loan documents for Loan 2 contain forgeries of the Ladds' signatures, including a security deed for real property the Ladds owned at 925 White Oak Drive, Newnan, Georgia. The security deed was recorded on July 10, 2006. According to the second amended complaint, the loan proceeds, minus total settlement charges, were $76,408.35. These funds went back to CertusBank but were not used to pay off Loan 1. Rather, these funds, in whole or in part, were allegedly converted to CertusBank's own use.

On June 8, 2006, the Ladds obtained another loan from CertusBank in the amount of $21,139.70, which was secured by a boat ("Loan 3"). Eventually, CertusBank repossessed the boat, sold it, and applied the proceeds to the balance of Loan 3. Also on June 8, 2006, the Ladds, who allegedly were unaware of the security deed, sold their real property to Douglas Creel.

Plaintiff alleges that "[a]t the time the Bank provided Loan 2, it knew that the Ladds had had difficulty making payments on Loan 1, and at the time it provided Loan 3, it knew the Ladds had had difficulty making payments on both Loans 1 and 2." Additionally, according to Plaintiff, "[t]he Bank continued to provide loans to the Ladds, knowing they could not make payments, so that the Bank could bombard the Ladds with late charges on all three notes, and

eventually repossess the collateral for such notes; such collateral including the fraudulently obtained security interest in real property owned by the Ladds."

On February 10, 2009, PPDPR filed a lawsuit on behalf of CertusBank against the Ladds in Carroll County, Georgia ("Carroll County action"). In the Carroll County action, CertusBank alleges that the Ladds fraudulently disposed of collateral securing Loan 2 and asserts causes of action for breach of promissory note, conversion, and attorney's fees. Plaintiff alleges the Carroll County action was filed at a time when Christopher Ladd was on active military duty. Because of the allegations in the Carroll County action, Plaintiff asserts that Christopher Ladd's security clearance in the military was revoked, which resulted in him missing a military promotion.

The Ladds filed bankruptcy under chapter 7 of the Bankruptcy Code on July 22, 2010. CertusBank, through PPDPR, filed a proof of claim for the debts it is allegedly owed. Plaintiff alleges that on July 5, 2011, PPDPR represented to her that the Ladds executed a security deed.

In this adversary proceeding initiated on October 29, 2012, Plaintiff alleged the following causes of action against PPDPR in her amended complaint: violation of the Fair Debt Collection Practices Act, violation of the Soldiers' and Sailors' Civil Relief Act, and abuse of process. She also asserted several causes of action against both CertusBank and PPDPR, including violation of the Georgia Residential Mortgages Act, forgery, and conspiracy. The following causes of action were asserted against CertusBank only: fraudulent misrepresentation, negligent misrepresentation, breach of contract by fraudulent act, and conversion.

PPDPR moved for judgment on the pleadings on all of the causes of action asserted against it, and CertusBank joined in the motion. On August 12, 2013, the Court entered an Order granting judgment on the pleadings with respect to the Fair Debt Collection Practices Act,

3

conspiracy, and abuse of process causes of action Plaintiff asserted on behalf of Donna Ladd. The Order identified other deficiencies in the amended complaint and gave Plaintiff fourteen days to file a second amended complaint correcting the deficiencies described. One of the deficiencies described related to Plaintiff's not contesting the defendants' argument there is no private cause of action under the Georgia Residential Mortgages Act and no cause of action for forgery under South Carolina or Georgia law but rather asserting she meant to allege a different cause of action instead of these two. The Court allowed Plaintiff an opportunity to assert the cause or causes of action she meant to allege.

Plaintiff did not timely file a second amended complaint, and the Court entered a rule to show cause on August 30, 2013, at 10:48 a.m. directing Plaintiff to appear and show cause why all of the causes of action for which the defendants sought judgment on the pleadings should not be dismissed with prejudice. Plaintiff filed her second amended complaint at 5:35 p.m. on August 30, 2013. The defendants then moved to dismiss or strike.

The second amended complaint alleges the following causes of action against PPDPR: violation of the Fair Debt Collection Practices Act on behalf of Christopher Ladd and abuse of process. It also alleges the following causes of action against both defendants: conspiracy on behalf of Christopher Ladd and wrongful foreclosure. Finally, it alleges the following causes of action against CertusBank only: fraudulent misrepresentation, negligent misrepresentation, breach of contract by fraudulent act, and conversion.

## ANALYSIS

**A. Rule to show cause and motions to strike**

Plaintiff's counsel has provided no excusable explanation for his failure to timely file the second amended complaint. Based on his statements at the hearing on October 8, 2013, it appears he did not read the last paragraph in the August 12, 2013 Order closely enough to realize he had fourteen days to file a second amended complaint addressing the deficiencies described in that Order. However, with the exception of the abuse of process cause of action Plaintiff asserts on behalf of Donna Ladd, the Court will not strike the second amended complaint or dismiss all of the causes of action on which the defendants had sought judgment on the pleadings. By allowing the second amended complaint, the Court has permitted Plaintiff an opportunity to assert the cause or causes of action she meant to allege instead of the Georgia Residential Mortgages Act and forgery causes of action asserted in the amended complaint. In doing so, Plaintiff pleaded a wrongful foreclosure cause of action that for reasons stated subsequently in this Order, is not a cause of action upon which relief can be granted.

The Court will strike the abuse of process cause of action brought on behalf of Donna Ladd. Judgment on the pleadings was granted to the defendants on this claim on statute of limitations grounds in the August 12, 2013 Order. Now, for the first time, Plaintiff argues and alleges in the second amended complaint that her abuse of process cause of action is partially based on PPDPR's filing of a proof of claim on behalf of CertusBank in the Ladds' bankruptcy and that the limitations period did not begin running until the date the proof of claim was filed. Plaintiff has provided no authority suggesting she should be able to circumvent the Court's August 12, 2013 Order in such a manner. If Plaintiff wishes for the Court to reconsider its previous Order granting judgment on the pleadings with respect to the abuse of process cause of

action brought on behalf of Donna Ladd, she will need to file a motion pursuant to Federal Rule of Civil Procedure 54(b), made applicable by Bankruptcy Rule 7054(a).  *See Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462 (4th Cir. 1991).  It is not clear at this stage what basis Plaintiff would have for requesting the Court reconsider its August 12, 2013 Order, considering the amended complaint suggests Plaintiff knew about the proof of claim and simply failed to include it as a basis for her abuse of process cause of action in the amended complaint and failed to argue in response to the defendants' motion for judgment on the pleadings that the statute of limitations began to run on the date the proof of claim was filed.  Regardless, the issue of whether reconsideration is appropriate is not currently before the Court.

**B. Motions to dismiss**

*1. Legal Standard*

Federal Rule of Civil Procedure 8(a)(2), made applicable by Federal Rule of Bankruptcy Procedure 7008, provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."  *Edwards v. City Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S.

6

at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Harman v. Unisys Corp.*, 356 Fed. Appx. 638, 640 (4th Cir. 2009) (per curiam). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

   *2. Wrongful foreclosure*

In place of the conspiracy and Georgia Residential Mortgages Act causes of action alleged in the amended complaint, Plaintiff asserts a wrongful foreclosure cause of action under Georgia law in the second amended complaint. "Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004). The tort of wrongful foreclosure is based on a grantee's failure to "comply with the statutory duty under OCGA § 23-2-114 to exercise fairly the power of sale in a deed to

7

secure debt." *DeGolyer v. Green Tree Serv., LLC*, 662 S.E.2d 141, 147 (Ga. Ct. App. 2008). Consequently, "a violation of the [foreclosure] statute is necessary to constitute a wrongful foreclosure." *McCarter v. Bankers Trust Co.*, 543 S.E.2d 755, 758 (Ga. Ct. App. 2000).

After careful consideration, the Court concludes Plaintiff's wrongful foreclosure cause of action should be dismissed. Plaintiff has not alleged how the defendants violated the Georgia foreclosure statute, which is an essential element of a wrongful foreclosure cause of action. Establishing a legal duty owed by a "foreclosing party" is another essential element of a wrongful foreclosure cause of action. According to the allegations in Plaintiff's second amended complaint, there was no foreclosing party in the Carroll County action because CertusBank asserted no cause of action for foreclosure of the real property at issue. Based on Plaintiff's own allegations in the second amended complaint, CertusBank only asserted causes of action for breach of promissory note, conversion, and attorney's fees in the Carroll County action. Moreover, according to the allegations in the second amended complaint, the Ladds no longer own the real property at issue but rather sold it to Douglas Creel on June 8, 2006. The Carroll County action was filed on February 10, 2009. In her response to the motions to dismiss, Plaintiff asserts "the evidence available to the Plaintiff reasonably suggests that PPDPR's ulterior or collateral motivation in filing the aforementioned law suit was to eventual [sic] force a judicial sale of the Ladd's real property." Therefore, Plaintiff agrees there has not been a violation of Georgia's foreclosure statute at this time but rather wants the defendants held liable because they might in the future foreclose on the property in a wrongful manner. However, Plaintiff's argument does not cure the deficiency of failing to allege how the Georgia foreclosure statute was violated and describes a claim that is not ripe for adjudication because "it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"

8

*Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). For these reasons, the defendants' motions to dismiss Plaintiff's wrongful foreclosure cause of action are granted.

      *3. Remaining causes of action*

      Plaintiff's remaining causes of action in the second amended complaint are pleaded sufficiently to survive a motion to dismiss. Therefore, the defendants' motions to dismiss these other causes of action are denied.

## CONCLUSION

      For the reasons set forth herein, the defendants' motions to strike or dismiss Plaintiff's second amended complaint are granted in part and denied in part. The motions are granted to the extent the defendants seek the striking of the abuse of process cause of action asserted on behalf of Donna Ladd and the dismissal of the wrongful foreclosure cause of action. The motions are denied to the extent the defendants seek the striking or dismissal of the other causes of action alleged in the second amended complaint. The rule to show cause is dissolved.

      The defendants' answers to the second amended complaint are due within fourteen (14) days of the entry date of this Order. *See* Fed. R. Bankr. P. 7012(a). Many, if not all, of the causes of action asserted in the second amended complaint appear to be non-core proceedings or core proceedings for which entry of a final order or judgment by this Bankruptcy Court may not be consistent with Article III of the United States Constitution. *See Stern v. Marshall*, -- U.S. --, 131 S. Ct. 2594 (2011); *In re Standing Order Concerning Title 11 Proceedings Referred Under Local Civil Rule 83.IX.01, Referral to Bankruptcy Judges*, Misc. No. 3:13-mc-00471-TLW (D.S.C. Dec. 5, 2013). In their answers, the defendants, therefore, should indicate whether they

consent to this Court entering final orders or a final judgment in this adversary proceeding. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 7012(b).

    AND IT IS SO ORDERED.

**FILED BY THE COURT**
**12/11/2013**



Entered: 12/12/2013

                     David R. Duncan
                     Chief US Bankruptcy Judge
                     District of South Carolina